## Knoppel's Estate.

*Commissions of executors, administrators and trustees—Rate—Sales of realty—General principles.*

1. Where estates are neither far above nor far below the average in size and their settlement is not attended with unusual labor, a commission of 5 per cent. upon personalty and from 2½ per cent. to 3½ per cent. on proceeds of sales of realty is usual and customary, and where there is a conversion by will, the rate on real estate actually sold is 3 per cent., and not 5 per cent.

2. A trustee may employ an agent to sell and pay that agent his ordinary commission for such service and have the same allowed as a credit without forfeiting his own right to the usual compensation.

3. In the instant case, the trustee was allowed 3 per cent. as his own commission on $52,000 proceeds of realty in addition to a commission of 2 per cent. paid by him to the agent for making the sale.

*Commissions and counsel fees—Findings of auditing judge.*

4. The findings of the auditing judge, both as to commissions and counsel fees, will not be disturbed unless there is manifest error.

Exceptions to adjudication. O. C. Phila. Co., Oct. T., 1899, No. 592.

The auditing judge, Henderson, J., said in his adjudication:

"The present accounting is of the proceeds of No. 1108 Arch Street and property in the rear, No. 1109 Cuthbert Street.

"Objection was made to the commissions claimed by the accountants on the sale of the said real estate.

"It appears that this property was subject to an irredeemable ground rent, which was finally purchased by the trustees for $3112.25, and it is claimed that the trustees' commissions should not be calculated on this amount, because the property should have been sold subject thereto.

"If this were the ordinary case of a mortgage or a ground rent existing against the decedent's property, much might be said in behalf of the objection. In this case, however, the ground rent was irredeemable and undoubtedly its existence might hurt the selling price of the property. The purchaser of a valuable property such as this, which was sold for $52,000, practically invariably needs to finance it with a generous first mortgage, and it is common experience that people will not loan on a mortgage subject to an existing ground rent. It was a good business stroke for the trustees to arrange for the purchase of this irredeemable ground rent when it could be purchased at a reasonable price, and the judgment of the trustees is undoubtedly reflected in the price finally obtained for the property. This objection is dismissed and the commissions will be allowed on the full sale price of the property.

"Objection was also made to the allowance of 2 per cent. to the real estate broker effecting the sale, and to the allowance of 3 per cent., the usual commission of the trustees. It was claimed by the objectors that the commission to the real estate broker should be paid by the accountants out of their commission.

"By error, the agent's commission is stated in the account as $1004 instead of $1040, the correct amount.

"These trustees were substituted as such in May, 1916, and arranged with the real estate department of the Commonwealth Title Insurance and Trust Company to place their sign on the property and handle the sale thereof. Robert J. Williams, Esq., one of the accountants, is assistant title officer of the Commonwealth Company.

"The property was ripe for sale when these accountants were appointed, and a minimum price of $31,000 was then agreed upon and considerable effort was made to obtain it, but without result.

"The accountants suggested a peremptory sale, but the objectors and other heirs thought this unwise and the accountants held the property; and further efforts, fully and completely detailed in the testimony, were made to secure a satisfactory purchaser.

"The heirs directed the accountants to place the property in the hands of Barber, Hartman & Co., and when they endeavored to do so, this real estate firm declined until the heirs had agreed upon a price, and such an agreement the accountants were unable to obtain.

"William Knoppel, one of the accountants, interviewed the heirs at various times, and testified that there was always anger and contention until he thought it was best to keep away from them and leave the matter to their counsel.

"The accountants also endeavored to place the property, at the suggestion of the heirs, in the hands of J. T. Jackson & Co. They also declined to place it upon their books until a price was fixed.

"In May, 1922, an effort was made to sell the property at public sale through Barnes & Lofland, a minimum price being fixed of $50,000, and as the highest bid was but $47,600, this was refused.

"Had the accountants, when first appointed, exercised the power of sale given in the will and peremptorily sold the property, the result would have been disastrous to these heirs, because in 1916 not even a bid of $31,000 was secured. The offer of $52,000, which was finally obtained by Mr. Schaefer, of the real estate department of the Commonwealth Title Insurance and Trust Company, and which was accepted, was 'subject to a commission of 2½ per cent.,' which was afterwards reduced to 2 per cent.

"I know of no rule which requires an accountant who is not in the real estate business to place his sign on the property and which would require him, if the property is sold through a broker, to pay the broker out of his commissions. The instances in which accountants not in touch with the real estate world would be able to negotiate a satisfactory sale of real estate, and especially if the real estate is difficult to handle, as it was in this case, are very few in number. It was a distinct advantage to this estate to employ a real estate broker, and the fact that $31,000 could not be procured in 1916 and a sale effected for $52,000 recently is abundant justification of the course of the trustees. Furthermore, it should be pointed out that the heirs recognized the desirability of placing the property in the hands of real estate brokers, because they twice suggested the names of firms to whom the property should be committed.

"I have not attempted to review in detail the 100 pages of testimony which was taken in this matter, but suffice it to say with the foregoing brief recital that, in my opinion, the commissions are reasonable and will be allowed."

*Horace M. Rumsey*, for exceptions.

*Theodore F. Jenkins* and *Lewis, Adler & Laws*, contra.

LAMORELLE, P. J., Oct. 27, 1923.—The twelve exceptions filed on behalf of legatees, entitled, all told, to four twenty-sevenths of the fund, raise questions as to the amount and rate of commissions, the basis of calculation thereof, and the right to employ at the expense of the estate an agent to make a sale of realty.

As a broad proposition, where estates are neither far above nor far below the average in size, and which are not attended in their settlement with unusual labor, a commission of 5 per cent. upon the personalty and from 2½ to 3½ per cent. upon sales of realty is usual and customary; and where there

3 D. & C.

Knoppel's Estate.

is a conversion by will, the rate on real estate actually sold is 3 per cent. and not 5. See Sharp's Estate, 9 Dist. R. 727, and cases therein cited and analyzed.

That a trustee may employ an agent to sell and pay that agent the ordinary commissions for such services and have same allowed as a credit without forfeiting his, the trustee's, right to his usual compensation is well settled. Says Penrose, J., in Gallet's Estate, 19 Phila. 15, at page 16: "In all cases the burden is upon the party seeking to reduce commissions below the ordinary allowance. That the sale was effected through the agency of a real estate broker, who was paid out of the purchase money, does not seem to be a sufficient reason for such reduction. The grant of the power of sale implies the power to employ the usual methods of accomplishing it; and there seems to be no more reason for placing the cost of this upon the executor in the case of a private than of a public sale. If the executor, in good faith and because he believes the interests of the estate will be promoted by so doing, employs a broker to obtain a purchaser, he certainly should not be placed in a worse position with regard to his compensation than if he had obtained the same or a less price by the employment of an auctioneer."

The adjudications relied upon by exceptants, wherein trustees have delegated their duties to agents, such as that in Tull's Estate, 1 D. & C. 292; Adare's Estate (Jan. T., 1921, No. 649), 1 D. & C. 296, and Shoemaker's Estate, Oct. T., 1922, No. 561 (not reported), rest on their own peculiar facts and do not affect, nor were they intended to affect, the general rule laid down in the authorities.

Moreover, it is well settled that the findings of an auditing judge, both as to commissions and counsel fees, will not be disturbed unless there be manifest error: Fisher's Estate, 25 Dist. R. 362; Bergdoll's Estate, 25 Dist. R. 102, and cases therein cited. A trustee is to be properly compensated for the services which he performs, and we are to consider the amount of work, character of the work, to a certain extent the size of the estate and, of course, the responsibility. In the instant case, an examination of the somewhat voluminous record discloses no reversible error, and we think the auditing judge was well within the authorities in allowing the compensation which he did, which was, as a percentage, 3 per cent. on $52,000, in addition to a commission of 2 per cent. paid the agent making the sale. Compensation of approximately $1500 to the trustees is fully warranted, and it can make little difference whether we call the allowance a percentage on the *corpus* or treat it as a round sum for work done and responsibility incurred. Special compensation might have been allowed for the foresight exhibited by the trustees in buying in the irredeemable ground rent on a 4 per cent. basis, in event that the 3 per cent. commission was to be calculated on the difference between the price at which the property was sold and the agreed redeemable value of the ground rent, but the auditing judge elected to compute the compensation at 3 per cent. on the entire purchase money; it being admitted that the sale could not have been made at all if the ground rent was to remain. As, however, we all agree that the amount of compensation was not unreasonable, the method of reaching the figures is of little moment.

In that the reasons given by the auditing judge to the allowance made by him are sound and his failure to make certain findings of fact immaterial, we refuse the prayer of the petition asking a rehearing and review.

All exceptions are dismissed and the adjudication is confirmed absolutely.